UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRIAN DARON,

        Plaintiff,

  v.                                    CAUSE NO. 3:23cv1101 DRL

NORFOLK SOUTHERN RAILWAY
COMPANY,

        Defendant.

## OPINION AND ORDER

Brian Daron moves to strike Norfolk Southern Railway Company's late expert disclosure. Norfolk Southern asks the court to deny the motion, else bar Mr. Daron's proposed experts as likewise late. The court bars the use of Norfolk Southern's late tendered experts.

Discovery and disclosure obligations were clear in the amended scheduling order: Mr. Daron's deadline to disclose experts and serve expert reports was November 22, 2024; Norfolk Southern's deadline was December 23, 2024; the deadline for discovery-related nondispositive motions was January 24, 2025, and the deadline for all discovery was February 20, 2025. The court likewise imposed an August 1, 2025 deadline for motions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and scheduled a seven-day jury trial to begin November 3, 2025, with a final pretrial conference on October 20, 2025.

Rule 26 requires a party to disclose expert witnesses and their reports "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Rule 37 requires the exclusion of a witness or information a party failed to properly disclose "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *accord Musser v. Gentiva Health Servs.*, 356 F.3d

751, 758 (7th Cir. 2004) ("automatic and mandatory . . . unless non-disclosure was justified or harmless"); *see also Karum Holdings LLC v. Lowe's Cos.*, 895 F.3d 944, 951 (7th Cir. 2018). The court considers four factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Parties should never just assume the court will enforce anything but its orders on scheduling and discovery. At the start nonetheless, with most of these growing from the federal rules, the court has three expectations of parties and their counsel in this vein—to regularly confer, to follow the scheduling order (or seek an accommodating amendment), and to comply with agreements struck between the parties. It seems the parties conferred at times. Neither side followed the scheduling order. On this record, only Norfolk Southern failed to comply with its agreement to disclose. It stands alone in losing the opportunity to call three specialists.

To explain—Mr. Daron says, without contest from Norfolk Southern, that the parties informally agreed to permit expert disclosures through the deadline for all discovery (February 20, 2025) to accommodate other professional obligations and trials arising from the same railyard collision at issue here (and in which both counsel were involved). Indeed, the parties reported in a status report prior to that deadline that they had agreed to cooperate on expert witness disclosures and depositions. This isn't an excuse not to comply with the court's scheduling order or not to seek an extension if good cause required one. It merely means the parties chose to work off-script and thereby invited the Rule 37 analysis at their own peril, despite any agreement they might have struck on disclosures.

2

For its part, Norfolk Southern told the other side it might rely on experts—first on December 10, 2024 and later at a January 27, 2025 status conference, explaining then that it might use an economist, a vocational rehabilitation expert, and an orthopedic surgeon. This was conferring; it wasn't a Rule 26 disclosure. Not until June 12, nearly five months after Mr. Daron's last disclosure, nearly six months after the court-ordered deadline, and months after discovery closed, Norfolk Southern once more broached the issue of coordinating a new date. This wasn't a disclosure either. Only last month, on July 9, did the company serve a vocational rehabilitation report from Julie Bose. This seems to have been a full disclosure, albeit measurably late—both in regard to the scheduling order and the parties' agreement. Then, only in its response brief it seems (July 25) did Norfolk Southern disclose that the company retained a medical physician (Dr. Phillip Sailer) and economist (William Pearson). This wasn't a full Rule 26 disclosure either, nor would an imminent disclosure have accommodated the court's August 1 *Daubert* motion deadline leading to the November 3 trial.

Norfolk Southern has not shown that its nondisclosures were substantially justified or harmless. On this record, only one of three expert disclosures have even occurred. That one occurred approximately seven months after the court-imposed deadline, five months after the parties' informal deadline, months after discovery closed, and on the eve of the court's deadline for *Daubert* motions. Norfolk Southern says Mr. Daron received early notice that it intended to call expert witnesses, but by its own account it only began preparing disclosures in earnest around June 12, 2025. Whether Mr. Daron may have suspected the railway's intentions earlier, it is clearly a surprise to raise the issue so long after the formal deadlines, not to mention an informal one, and months after the 60-day window it previously proposed. Moreover, the late disclosures and

3

service of reports so close to the *Daubert* deadline were prejudicial—Mr. Daron would have been hard pressed to conduct expert discovery and file any motions to exclude Ms. Bose in twenty days, much less for the other experts, and the opportunity is now closed. The only way to accommodate this work and the court's deliberation would be to disrupt the trial schedule, which neither party requests and the court is loath to do. Even without a finding of bad faith or willfulness, though inevitably some flagrancy, Rule 37 counsels the exclusion of these witnesses.

As justification, Norfolk Southern says it relied on Mr. Daron's added representation that the parties would cooperate in expert discovery and suggests it disclosed its opinion witnesses at the earliest feasible moment. To cooperate is a fine principle, and one to be encouraged, but it isn't a definitive agreement that the court can enforce, nor one that will be enforced perpetually to the detriment of the scheduling order and trial. It seems the parties faced headwinds with scheduling the plaintiff's deposition, gathering medical records, and personal circumstances such that this deposition only occurred in April 2025 after the close of discovery. The parties already enjoyed nearly a year's worth of discovery, no doubt aided by discovery in a related case, and it isn't altogether clear why these became headwinds so late in the discovery process. But there was a simple solution to this dilemma knowing what the company knew for months—request an accommodation to the court's scheduling order. Whether Norfolk Southern was hamstrung by this timeline, the exclusion of experts is a foreseeable result of the chancy game played by parties who take discovery into their own hands and fail to request new deadlines from the court. It becomes even more precarious when disclosures occur well beyond any seeming agreement between the two sides as to another informal deadline. Norfolk Southern knew of all Mr. Daron's experts before the nondispositive motions and discovery deadlines and knew the obligations it

4

agreed to off the books. It never asked the court for more time, and there's no indication it attempted to reassess self-imposed deadlines with Mr. Daron. Nor is there any record of real diligence to complete expert disclosures after the April 2025 deposition. A month is often customary; the more extraordinary use of three (or more) months, particularly in light of a fast-approaching trial date, remains unexplained, and in that unjustified. Because these late disclosures of three specialists are neither substantially justified nor harmless, the court excludes these witnesses under Rule 37.

Norfolk Southern has not filed a motion to exclude Mr. Daron's proposed experts as late but complains that excluding the company's witnesses without excluding the plaintiff's witnesses would be unfair. What is good for the goose is good for the gander. The very same standard applies to Mr. Daron and his proposed experts. He too invited the Rule 37 analysis with his late disclosures. It just so happens that this calculus of factors doesn't compel their exclusion. His deadline was November 22, 2024. On December 6, 2024, Mr. Daron disclosed a biomechanic (Dr. Sean Kohles) and partially disclosed an economist (Dr. Karen Tabak). He served the economist's report on January 21, 2025. Mr. Daron ostensibly had disclosed the biomechanic's opinions to Norfolk Southern on June 1, 2023 in a companion case, *see Hardy v. Norfolk S. Ry.*, Cause No. 3:21cv800 (N.D. Ind. Apr. 3, 2025) (Brisco, J.), in which he was deposed by Norfolk Southern on August 16, 2024, and in which he testified and was cross-examined at trial on November 19, 2024. Mr. Daron reports the biomechanic's opinions have not changed.

Mr. Daron wasn't justified in working outside the court's scheduling order, so neither party's hands are entirely clean. At the same time, Norfolk Southern cannot complain of prejudice or surprise when the company received the plaintiff's full expert disclosures before discovery

5

closed (as discussed), had the opportunity to conduct any depositions, and indeed had (and took) the opportunity to file any *Daubert* motions by the August 1 cutoff. It would be difficult to claim surprise when the parties seemingly agreed to disclosures by February 20, and the company got them before then. Nor, quite differently, would permitting these witnesses disrupt the court's pretrial or trial dates. There is no allegation of bad faith.

Optically, just on its face, there may seem to be a difference in result for two sides who ignored their obligations under the scheduling order, but questions of justification, prejudice, surprise, the ability to cure, and flagrancy are often matters of degree, and different facts can often lead to different results, even if two parties are held to the same standard. Such it is today.

For these reasons, the court GRANTS Mr. Daron's motion [30] and EXCLUDES the testimony of Julie Bose, Dr. Phillip Sailer, and William Pearson for purposes of trial.

SO ORDERED.

August 22, 2025                                          *s/ Damon R. Leichty*
                                                        Judge, United States District Court